**Leo Alexander JONES, Roy Clifton Swafford, Milford Wade Byrd, and Raleigh Porter, Plaintiffs,**

**v.**

**Ronald McANDREW, Harry K. Singletary, and Robert Butterworth, Defendants.**

**No. 4:97CV103–RH.**

United States District Court, N.D. Florida, Tallahassee Division.

Feb. 20, 1998.

Martin James McClain, Miami, FL, for plaintiffs.

Richard B. Martell, Tallahassee, FL, Paul David Brannon, Attorney General, Tallahassee, FL, for defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

HINKLE, District Judge.

Plaintiffs, who are under sentence of death imposed by Florida state courts, assert that the protocols and procedures used by the state to conduct electrocutions impose a substantial risk of producing fires on or about their heads during the process, as has occurred in two recent executions. Defendants have moved for summary judgment. For the reasons that follow, I grant the motion.

#### Background

Florida courts have sentenced plaintiffs Leo Alexander Jones, Roy Clifton Swafford, Milford Wade Byrd and Raleigh Porter to death. In this action they assert that defendants have been, and still are, deliberately indifferent to the risk that fire will erupt about their heads during the electrocution process. They base this claim in part on historical events. Fire erupted during the state's electrocution of Jesse Tafero on May 4, 1990, and Pedro Medina on March 25, 1997. These were two of the state's last 18 electrocutions. Plaintiffs seek injunctive relief under 42 U.S.C. § 1983 to prevent a recurrence in their own executions.

Defendants are the Secretary of the Florida Department of Corrections, Harry K. Singletary, and the superintendent of the Florida State Prison, Ronald McAndrew, in their official capacities.[1] They are represented in

---

1. In their complaint, plaintiffs also named as

defendants Mr. Singletary and Mr. McAndrew in

this action by the Attorney General of Florida, who speaks for the named defendants in their official capacity and thus for the State of Florida.[2]

Defendants acknowledge that fire broke out during the two executions. The state apparently attempted unsuccessfully to diagnose and correct the problem after the first such event. Now, after a recurrence, the state again says it has diagnosed and corrected the problem, so that no fires will occur during any future executions.

Defendants have moved for summary judgment on various grounds. First, they assert this court lacks jurisdiction to consider plaintiffs' claims because, defendants say, any challenge to procedures attending implementation of the death penalty must be brought as a habeas corpus petition, not as an action under 42 U.S.C. § 1983. Second, defendants say the court cannot address the claims of the plaintiffs other than Mr. Jones at this time because, even though these plaintiffs have been sentenced to death, they are not yet under warrant and their executions thus are not yet sufficiently imminent to convey standing or make their claim ripe for adjudication. Third, defendants say plaintiffs cannot present their claim on the merits in this court because the Florida Supreme Court rejected Mr. Jones's similar claim as brought in that court; the state successfully opposed the other plaintiffs' intervention in that action but now, having successfully kept them from having their day in court there, asserts these plaintiffs cannot have their day in court here either. Fourth, defendants assert the Eleventh Amendment bars this action, even though this is an action not against the state itself but against state officials. Fifth, defen-

dants assert plaintiffs' claim is unfounded on the merits.

Because the first four of these grounds would, if sustained, preclude this court from addressing the merits, I address each of these contentions before turning to the merits. My conclusion is that the case is properly here; that plaintiffs have standing and the case is ripe for adjudication; that Mr. Jones's claim is barred by the doctrine of res judicata but the claims of the other plaintiffs are not; that this action is not barred by the Eleventh Amendment; that there is a disputed issue of fact regarding whether the procedures now in place in the State of Florida create a substantial risk of another fire during the execution process; that Mr. Singletary and Mr. McAndrew, in proceeding under protocols amended in apparent good faith and approved by the Florida Supreme Court after the last fire, are not acting with deliberate indifference to the risk of another fire; and that plaintiffs thus are not entitled to prevail in this action.

## I. JURISDICTION

Defendants assert that a death-sentenced prisoner may challenge the procedures by which he or she will be executed only by petition for habeas corpus, not in an action under 42 U.S.C. § 1983. If defendants were correct, this court would have no jurisdiction to hear this action at this time, because plaintiffs have failed to exhaust state judicial remedies (as required in habeas cases) and have failed to meet the standards for, or to obtain permission to file, a second or subsequent habeas petition. *See* 28 U.S.C.

---

their individual capacities. At the pretrial conference, the defendants acquiesced in the assertion that any finding of liability against Mr. Singletary or Mr. McAndrew individually would also entitle plaintiffs to prevail against Mr. Singletary and Mr. McAndrew in their official capacities, and that any relief available against these defendants individually would be available against them in their official capacities. Based on this, plaintiffs moved ore tenus for voluntary dismissal of their claims against Mr. Singletary and Mr. McAndrew in their individual capacities. As announced at the pretrial conference, I grant the motion, without taxation of costs or fees.

**2.** Plaintiffs originally named Attorney General Robert Butterworth, in his official capacity, as an additional defendant. Defendants have acknowledged that, if plaintiffs were to prevail in this action, complete relief could be afforded against Mr. Singletary and Mr. McAndrew. Mr. Butterworth asserts that he is not a proper defendant. Plaintiffs make no claim that Mr. Butterworth has had in the past or currently has any role in designing or implementing the state's procedures for performing electrocutions. As announced at the pretrial conference of February 13, 1998, I grant Mr. Butterworth's motion for summary judgment on this basis, without reaching any other issue as to him.

§ 2254(b)(1); 28 U.S.C. § 2244(b)(2).[3] The issue, then, is whether plaintiffs properly may pursue this action under § 1983.

■ At least in cases not involving the death penalty, the distinction between claims that may be brought under § 1983 and those that must be brought as habeas petitions is now reasonably well settled. Claims in which prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence, such as, for example, a serious risk of beatings or sexual assaults at the hands of other prisoners, are § 1983 actions, not habeas actions. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Habeas actions, in contrast, are those that explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by (or under the administrative system implementing the judgment of) a court. Thus, for example, when a prisoner makes a claim that, if successful, would shorten his term of imprisonment, the claim must be brought as a habeas petition, not as a § 1983 claim. *See, e.g., Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

■ Based on this settled distinction, the claim at issue here is far more analogous to the kind of claim properly (and routinely) brought under § 1983 than to a habeas action. This is not a challenge to any plaintiff's conviction or to the sentence of death. This is not even a challenge to the proposed carrying out of the sentence by electrocution. This is, instead, a challenge to the state's procedures that have in the past led to fires during the electrocution process—a challenge

not to the sentence but to the conditions under which the state proposes to carry it out.[4]

The state courts sentenced these plaintiffs to death. Under state law as currently in force, that sentence is to be carried out by electrocution. *See* § 922.10, Florida Statutes (1997). The state courts did not, however, sentence these plaintiffs to death by electrocution accompanied by fire, nor does the applicable state statute call for such a sentence. Defendants make no claim that death by electrocution accompanied by fire is the sentence plaintiffs face.

Thus this is not a case where plaintiffs challenge their convictions or sentences. Defendants seem to contend, however, that in reality this action is a challenge to the sentence of death, or at least to the carrying out of that sentence by electrocution, because, defendants seem to contend, any relief afforded plaintiffs necessarily would interfere with the carrying out of the death sentence.

Not so. Plaintiffs' claim that the state's electrocution protocols and procedures violate the Eighth Amendment encompasses many possible violations for which meaningful relief could be afforded without in any way interfering with or even delaying the carrying out of their death sentences. Identifying these with particularity is impossible without fully addressing the merits, but examples abound.

Thus, for example, as part of its electrocution procedures, the state uses sponges soaked in saline solution as an interface between parts of the condemned prisoner's body (including his or her head) and the electrodes that convey electricity to the body.

**3.** If this were a habeas petition, venue in this court also would be improper, plaintiffs having been convicted in state courts located in other districts. Venue in this district is proper, however, for a § 1983 action, because two of the defendants, Mr. Singletary and Mr. Butterworth, reside in this district, and all defendants reside in this state. *See* 28 U.S.C. § 1391(b).

**4.** To be sure, plaintiffs in their complaint also asserted that electrocution is an unconstitutional method for carrying out the death sentence. I announced the dismissal of this claim at the outset of this litigation based on controlling decisions of the United States Supreme Court and

the Eleventh Circuit. *See* Order dated October 8, 1997 (document 18); *In Re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); *Felker v. Turpin*, 101 F.3d 95, 97 (11th Cir.1996); *Sullivan v. Dugger*, 721 F.2d 719 (11th Cir.1983). Defendants insist, however, that I have no jurisdiction of the claim that electrocution is always unconstitutional, and I concur. *Felker*, 101 F.3d at 96–97; *Hill v. Hopper*, 112 F.3d 1088 (11th Cir. 1997). The judgment dismissing this claim thus will be for lack of jurisdiction, without prejudice.

Defendants assert that these sponges were responsible for the fires during the Tafero and Medina electrocutions. Defendants assert that fire erupted during the Tafero electrocution because an artificial sponge rather than a natural sponge was used; defendants say the artificial sponge was an insulator, causing excessive heat and a resulting fire. Defendants assert that fire erupted during the Medina electrocution because a sponge was sewn into the headgear and was not appropriately soaked in saline solution prior to the procedure.

Defendants now say they have eliminated the permanently affixed sponge and adopted protocols to prevent the use of an inadequately soaked sponge. The plaintiffs, however, challenge the adequacy of the changed protocols. If, as plaintiffs contend, defendants have failed, as a result of deliberate indifference to the risk of fire, to diagnose or correct the problem and thus are subjecting plaintiffs to a substantial and unnecessary risk of fire, this clearly would constitute a violation of the Eighth Amendment. This court would have jurisdiction to redress such a constitutional violation by an appropriate injunction, for example, an injunction requiring defendants to use only an appropriately soaked natural sponge, as defined in an appropriate manner. Such an injunction would not interfere with or delay the carrying out of the death sentence, but it would prevent a violation of the Eighth Amendment.[5]

Thus, contrary to defendants' position, this action challenging electrocution protocols and procedures is not a challenge to the death *sentence* itself that must be brought by habeas petition rather than under § 1983. This is, instead, an Eighth Amendment claim that is not analytically different from cases brought under § 1983 every day.

An example is *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811

(1994). In that case, precisely as in the case at bar, the plaintiffs were state prisoners who asserted that they had been subjected to a constitutionally impermissible risk of unintended harm which the defendant state prison officials had failed to prevent and to which the state prison officials were deliberately indifferent. The Supreme Court held that that assertion stated an Eighth Amendment claim and that plaintiffs could pursue that claim under § 1983. The Court announced the substantive principles applicable to such a claim.

To be sure, the plaintiffs in *Farmer* were under sentence of imprisonment, not under sentence of death, and the general principles recounted above are those applicable to habeas claims and § 1983 actions generally, not just those involving death-sentenced prisoners. But the general principles applicable to habeas and § 1983 actions are the same in relevant respects for death-sentenced prisoners and prisoners sentenced only to imprisonment. There is absolutely no basis in habeas law, in the language of the habeas statutes or the Anti–Terrorism and Effective Death Penalty Act of 1996,[6] or in § 1983 for any contrary assertion. Unless the court is to adopt a result-oriented approach to litigation involving the death penalty, the same general principles that apply generally to habeas petitions and § 1983 actions must be followed here.

Without addressing these general principles, defendants cite cases they say foreclose any § 1983 action challenging the manner in which the state will carry out an execution. The cases cited by defendants, however, are different. In each of those cases, the plaintiff challenged the constitutionality of electrocution per se, not the particular manner in which the proposed electrocution would be conducted. Thus, unlike in the case at bar, any ruling in plaintiff's favor in those cases

---

**5.** The example in the text is only one of many. For instance, the plaintiffs also raise a question about the adequacy of the state's testing of the gel used during the process. If plaintiffs were to prevail on this claim, appropriate relief could be granted without in any way interfering with the carrying out of the death sentence. No purpose would be served by cataloguing here all of the possible details of the electrocution procedure that are encompassed within plaintiffs' claim. It

is sufficient, for purposes of analyzing jurisdiction, to note that there are many respects in which challenges to electrocution protocols or procedures do not in any way implicate the validity of the underlying conviction or the sentence of death.

**6.** *See* Pub.L. No. 104–132, 110 Stat. 1214 (1996).

would have prevented the carrying out of the death sentence, unless and until state law was changed to provide an alternative method of execution. This distinction is important, because, as set forth above, cases that challenge a prisoner's sentence, explicitly or by necessary effect, must be brought as habeas petitions.

That this is the controlling distinction is made clear by, or at least is consistent with, all of the relevant cases cited by the parties or of which I am aware. The Eleventh Circuit has addressed three recent § 1983 actions challenging proposed executions, and all comport with this analysis.

The first was *Ingram v. Ault*, 50 F.3d 898 (11th Cir.1995). There the plaintiff brought an action under § 1983 seeking to enjoin his imminent execution. The plaintiff raised three claims: first, that electrocution always is an unconstitutional method for carrying out the death penalty; second, that the state's procedures denying him face-to-face contact with his spiritual advisor in the hours immediately preceding execution were unconstitutional; and third, that the state's procedures denying him face-to-face contact with his attorney in the hours immediately prior to the execution were unconstitutional. The Eleventh Circuit considered and rejected all three contentions on the merits without explicitly deciding the issue of whether these contentions properly could be raised in an action under § 1983.[7]

A year later the Eleventh Circuit decided *Felker v. Turpin*, 101 F.3d 95 (11th Cir.1996). There the plaintiff brought an action under § 1983 seeking to enjoin his imminent execution. The plaintiff raised only a single claim: that electrocution always is an unconstitutional method for carrying out the death penalty. The Eleventh Circuit held that this was a claim that could be brought only by habeas petition, not under § 1983. The court did not cite *Ingram v. Ault*. As an alternative basis for its holding, the court also considered and rejected plaintiff's claim on the merits, upholding electrocution as a method for carrying out the death penalty.

The Eleventh Circuit next addressed this issue in *Hill v. Hopper*, 112 F.3d 1088 (11th Cir.1997). In *Hill*, like in *Felker*, the plaintiff brought an action under § 1983 seeking to enjoin his imminent execution and raising only a single claim: that electrocution always is an unconstitutional method for carrying out the death penalty. The Eleventh Circuit followed *Felker* and held § 1983 unavailable as a vehicle for raising this claim. Unlike in *Felker*, the court did not address the merits as an alternative basis for its holding.

The teaching of these cases is twofold. First, a *per se* challenge to a method of execution mandated by state law must be brought as a habeas petition, not under § 1983. This is the square holding of *Hill* and the primary holding of *Felker*. To the extent *Ingram* implicitly suggests or holds to the contrary, it has been superseded by *Felker* and *Hill*.[8] Other circuits have concurred.[9]

---

**7.** In a footnote, the court said, "Because [defendants] did not argue in the district court the doctrine articulated in *Gomez v. United States Dist. Court for the N. Dist. of Cal.*, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992), we decline to address that issue." *Ingram*, 50 F.3d at 900 n. 2. In *Gomez*, a death-sentenced plaintiff who had brought four unsuccessful habeas claims attempted at the last minute to challenge his execution on the grounds that use of the gas chamber always constituted cruel and unusual punishment. In its brief *per curiam* opinion, the Supreme Court noted that the claim could have been brought more than ten years earlier and was an "obvious attempt at manipulation" and an "abusive delay." *Gomez*, 503 U.S. at 654. The Court said that equitable principles, applicable whether the claim was properly brought in habeas or under § 1983, precluded the last-minute claim.

**8.** Under *Bonner v. City of Prichard,* 661 F.2d 1206 (1981) (*en banc*), the controlling law of the circuit ordinarily is the *earliest* panel opinion on an issue, not a later panel opinion that failed to follow the controlling, earlier opinion. Here, however, I conclude that the law of the circuit, on the narrow issue of whether per se challenges to a method of execution may be brought under § 1983, is that set forth in *Felker* and *Hill*, because they explicitly addressed the issue, while *Ingram* did not. In addition, the court in Ingram noted it was not addressing any issue under *Gomez v. United States Dist. Court*, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992). *Ingram*; 50 F.3d at 900 n. 2. While ambiguous, this footnote renders *Ingram* a less than clear precedent on this issue.

**9.** *See, e.g., In Re Sapp*, 118 F.3d 460 (6th Cir. 1997); *Williams v. Hopkins*, 130 F.3d 333 (8th Cir.1997).

■ Second, other challenges to execution protocols or procedures—challenges that would not prevent the carrying out of the death sentence by the method mandated by state law—may be brought under § 1983. *Ingram* so held, at least implicitly, when it addressed on the merits the plaintiff's challenges to procedures restricting access to a spiritual advisor and attorney in the hours preceding execution.[10] No case holds to the contrary.

Thus the analysis comes full circle. On accepted general principles applicable to habeas and § 1983 actions, this is not a challenge, either explicitly or by necessary effect, to plaintiffs' convictions or sentences of death, and thus this is an action that may be brought under § 1983. The one Eleventh Circuit decision addressing such a claim is *Ingram v. Ault*, which either authorizes this action or, even accepting defendants' view, is neutral. There is no law to the contrary. In short, defendants' position draws support neither from general principles nor from the cases it cites.

What defendants really seek, apparently, is in effect the adoption of different rules for death cases. One wonders whether defendants will really espouse such a result-oriented approach consistently, or whether, instead, defendants will ask the court to follow the established law (as applicable to habeas and § 1983 claims generally) when that better suits the state's purposes.

Regardless of defendants, position, I conclude that I should follow the law, without attempting to skew the result in any particular case or class of cases. When courts address matters of special importance, such as the death penalty, they should be more attentive, not less attentive, to following the applicable law and rules of procedure. *See, e.g., Lonchar v. Thomas,* 517 U.S. 314, 116 S.Ct. 1293, 1298, 134 L.Ed.2d 440 (1996)

(holding that, in ruling on prisoner's first federal habeas petition, a court cannot ignore established "statutes, rules, precedents and practices" and dismiss the petition for ad hoc equitable reasons).

It is untrue factually that the case at bar is a last minute attempt to prevent the carrying out of a lawful sentence; at least with respect to plaintiffs Swafford, Byrd and Porter, this case was brought well in advance of their executions. In any event, the way to deal with any improper last minute attempt to interfere with the rule of law is by following the law, not disregarding it. *See Lonchar,* 116 S.Ct. at 1301. The law provides ample means for dealing with any improper last minute effort of the type apparently feared by defendants. The distinction between habeas and 1983 need not be blurred to reach the result defendants think would best serve their interests in this particular case. This is a § 1983 action, and the court has jurisdiction.

## II. STANDING

Defendants assert that the plaintiffs, although under sentence of death, have no standing to challenge the method by which they will be executed, and that in any event their executions are so far off that their claims are not ripe.

■ This is nonsense. A person under sentence of death obviously has standing to challenge the procedure by which he or she will be executed. Indeed, it is difficult to imagine how a party could have a more substantial personal stake in the outcome of litigation. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (setting forth general principles governing standing).

**10.** Defendants assert *Ingram* may be disregarded because of its footnote refusing to consider "the doctrine articulated in" the Supreme Court's *Gomez* decision. *See* footnote 7 supra. *Gomez,* unlike the case at bar, addressed a last minute, manipulative effort to prevent carrying out of the death sentence. Whatever weight a panel in the Eleventh Circuit might choose to afford the *Ingram* footnote, a conscientious district court in this circuit, when addressing a case brought well in advance of any execution and not involving abusive delay, cannot properly disregard the *Ingram* court's consideration of the spiritual advisor and attorney claims on the merits. Moreover, the *Ingram* footnote would at most render *Ingram* neutral on this issue; the footnote most assuredly does not suggest, even remotely, that the spiritual advisor and attorney claims could *not* properly be brought under § 1983.

Similarly, defendants' claim that Messrs. Swafford, Byrd and Porter are here too soon is disingenuous at best. Had these plaintiffs waited until they were under death warrant before filing their claims, defendants undoubtedly would have claimed they were here too late and were engaged in an "obvious attempt at manipulation" and "abusive delay." *See Gomez v. United States Dist. Court,* 503 U.S. 653, 654, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992). Now, however, when plaintiffs are here early enough to avoid any delay in their executions, defendants say the court should wait to address their claims until the last minute. Defendants' attempt to delay adjudication of this claim is both puzzling and, in any event, unfounded.

The state has adopted the specific protocols and procedures it says it will follow in all future electrocutions. These are not merely proposed or transient or evolving procedures; they are, instead, final procedures the state says will assure that there are no further fires. The issues raised by this claim are as well presented now, and as susceptible to meaningful review now, as they will be on the eve of plaintiffs' executions. Plaintiffs' challenge to the constitutionality of these procedures is ripe. *See generally Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (setting forth general principles of ripeness).

To be sure, the Governor, the Florida Corrections Commission, and a majority of the justices of the Florida Supreme Court apparently have recommended that the state approve lethal injection as a method of execution. *See, e.g., Jones v. State,* 701 So.2d 76, 80 (Fla.1997) (Harding, J., specially concurring); *id.* at 81–82 (Kogan, C.J., dissenting); *id.* at 82–88 (Shaw, J., dissenting); *id.* at 89 (Anstead, J., dissenting). A petition for certiorari seeking review of the Florida Supreme Court's most recent decision upholding electrocution as a method of execution,

and upholding the state's new protocols, is pending in the United States Supreme Court. *See Jones v. State,* 701 So.2d 76 (Fla.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1297, 140 L.Ed.2d 335 (1998).[11] Asked at the pretrial conference in this lawsuit why the state persists in using electrocution as its means for executing persons, defendants, counsel was unable to suggest any reason, other than that electrocution has not been held unconstitutional. It is perhaps not unreasonable to posit that the state legislature might heed the advice it has received and avoid the "train wreck" that Justice Harding of the Florida Supreme Court has said may be coming. *See Jones v. State,* 701 So.2d 76 (Fla. 1997) (Harding, J., specially concurring).

Still, the possibility that the state legislature may change the law does not prevent plaintiffs, claims from being ripe for adjudication. Neither side has asked that I delay consideration of this case on the merits pending further *legislative* developments, and, in accordance with the routine practice of courts every day of addressing legal issues that may be the subject of further legislation, I address this case on the merits without consideration of what the legislature may or may not do.

Plaintiffs are under sentence of death and have presented a substantial constitutional challenge to the specific state protocols and procedures by which the state proposes eventually to execute them. Plaintiffs have standing, and their claims are ripe.

### III. RES JUDICATA

In *Jones v. State,* 701 So.2d 76 (Fla. 1997), the Florida Supreme Court rejected a constitutional challenge by Leo Alexander Jones, one of the plaintiffs in the case at bar, to Florida's use of its electric chair. Under the doctrine of res judicata, that decision is binding on Mr. Jones and bars his claim in this action. *See, e.g., Allen v. McCurry,* 449

---

11. A number of justices of the United States Supreme Court have indicated previously that they may favor review of the precedents upholding electrocution as a method of execution. *See Poyner v. Murray,* 508 U.S. 931, 113 S.Ct. 2397, 2398, 124 L.Ed.2d 299 (1993) (Souter, J., respecting denial of certiorari, with concurrence of Blackmun and Stevens, JJ.) (noting that *In re* *Kemmler* "does not constitute a dispositive response to litigation on the issue [of the constitutionality of electrocution] in light of modern knowledge"); *Ford v. Arkansas,* 459 U.S. 1022, 103 S.Ct. 389, 74 L.Ed.2d 519 (1982) (Brennan and Marshall, JJ., dissenting from denial of certiorari).

U.S. 90, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

Messrs. Swafford, Byrd and Porter were not, however, parties to the Florida case. They sought to intervene in that case but, inexplicably, the state opposed their intervention. They were not allowed to participate.

■ Under the doctrine of res judicata as applied in Florida, judgments are binding only on parties and their privies. *See, e.g., Southeastern Fidelity Ins. Co. v. Rice,* 515 So.2d 240 (Fla.App. 4th Dist.1987). Defendants acknowledge this principle, as they must. Messrs. Swafford, Byrd and Porter were not parties in *Jones v. State,* nor were they in privity with Mr. Jones. They are thus not bound by the decision in that case.

■ Defendants imaginatively assert that "privity," for res judicata purposes, refers to the relationship between the current party and the "subject matter of the [prior] litigation," not the relationship between the current party and the *parties* to the prior lawsuit. In support of this contention, defendants quote out of context language from a case applying South Carolina law. *See Richardson v. Miller,* 101 F.3d 665, 668 (11th Cir.1996). As reference to the underlying South Carolina cases relied upon in *Richardson* makes clear, this passage will not bear the meaning defendants now attempt to ascribe to it. *See, e.g., Roberts v. Recovery Bureau Inc.,* 316 S.C. 492, 496, 450 S.E.2d 616, 619 (S.C.App.1994) ("privity is not established by the mere fact that persons may happen to be interested in the same question or in proving or disproving the same state of facts or because the question litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action. One whose interest is identical with that of a party but who does not claim through him, is not in privity with him"). In truth, no case has ever adopted the approach defendants now advocate, and, if applied in the manner defendants suggest, defendants' imaginative new principle would work a drastic change in the law.[12] Defendants assert no other grounds for holding Messrs. Swafford, Byrd and Porter to have been in privity with Mr. Jones in his capacity as petitioner in *Jones v. State.*

In short, Messrs. Swafford, Byrd and Porter are entitled to their day in court. The state, for reasons of its own, kept them from having their day in court in *Jones v. State.* Defendants' assertion that they are bound by the result in a case in which they were not allowed to participate is flatly inconsistent with settled principles of res judicata.[13]

### IV. ELEVENTH AMENDMENT

■ Defendants assert this action is barred by the Eleventh Amendment. It is not. Under the longstanding doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), federal courts may enforce federal constitutional and statutory rights in actions against state officials seeking prospective injunctive relief. This is precisely such a case.

To be sure, *Ex Parte Young* does not authorize an action to enforce federal rights when Congress has adopted a separate, narrower remedial scheme inconsistent with an *Ex Parte Young* action. *See generally Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This

---

**12.** For example, in mass tort situations, each alleged victim is entitled to his or her own day in court and is bound only by decisions in cases to which he or she is a party; results reached in cases involving only other alleged victims are not binding. If privity were established by relationship to the "subject matter" of prior litigation, then the result as to one victim would bind all other victims of the event or conduct at issue, even those not parties to the case. This would be the result, for example, in airline crash cases, bridge collapse cases, or product liability cases. A drastic change in the law, indeed.

**13.** This does not, of course, deprive the Florida Supreme Court's decision of precedential value with respect to questions of law. While decisions of the Florida Supreme Court on issues of federal law of course are not binding on this court, they have such persuasive value as the circumstances may warrant. And, as set forth in section V of this order, the decision of the Florida Supreme Court is a fact known to Mr. Singletary and Mr. McAndrew that appropriately may be considered in analyzing the state of mind with which they propose to carry out plaintiffs' executions.

is not such an action, and defendants make no claim that it is.

■ In an apparent challenge to the continuing validity of *Ex Parte Young*, however, defendants quote *Seminole Tribe's* statement that "the relief sought by a plaintiff suing a state is irrelevant to the question of whether the suit is barred by the Eleventh Amendment." *Seminole Tribe*, 116 S.Ct. at 1124. By its plain terms, however, this passage applies only to a plaintiff "suing a state." In the case at bar, plaintiffs are suing not the state but two state officers in their official capacity. The Eleventh Amendment bars suits against the state in its name regardless of the relief sought, just as *Seminole Tribe* said. Lawsuits against state officers in their official capacity, however, are barred only if they seek retrospective relief; such claims are not barred if, as here, they seek prospective relief.

*Seminole Tribe* did not overrule *Ex Parte Young* in this respect. Indeed, just one day before *Seminole Tribe* was decided, the United States Supreme Court granted prospective relief against Florida's insurance commissioner, without even mentioning the Eleventh Amendment. *See Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). Like *Barnett Bank*, this action for prospective relief may proceed against the defendant state officials and is not barred by the Eleventh Amendment.

Another example of such a case, closer factually to the case at bar, is *Ingram v. Ault*, 50 F.3d 898 (11th Cir.1995). There the Eleventh Circuit addressed on the merits a § 1983 action against a state official challenging electrocution procedures. Whatever the scope of that decision, it is at least clear that the Eleventh Circuit found no *Eleventh Amendment* bar to considering that case on the merits. As required by *Ex Parte Young*, and consistent with the Eleventh Circuit decision in *Ingram v. Ault*, the Eleventh Amendment does not bar plaintiffs' claims.

## V. MERITS

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the United States Supreme Court addressed a claim by prisoners that the state was subjecting them to an unnecessary risk of serious bodily harm that was not part of the sentence lawfully imposed upon them. The Court held that this stated a claim under the Eighth Amendment, and it set forth the applicable standards. *Farmer* governs plaintiffs' claims here.

The risk of harm at issue in *Farmer* was beating or rape at the hands of other prisoners. The risk of harm at issue here is fire at the hands of the executioner. Defendants' duty to avoid the infliction of serious injury at the hands of the state's own executioner is at least as great as their duty to avoid the infliction of harm by fellow inmates. Thus defendants' claim here that the applicable standard of care is *lower* than that imposed by *Farmer* is surely wrong.

■ A substantial case could be made for imposing on defendants a *higher* duty to avoid harm caused by the state's own employees. At least under the circumstances here, however, I reject any such assertion. No matter who actually inflicts the injury, the Constitution speaks only to actions taken under color of law, that is, actions of the corrections officials at issue. Thus the appropriate standard is that applicable to conduct of corrections officials that might lead to unintended harm, by whatever means inflicted. This is the standard the Supreme Court announced in *Farmer*.

■ As the Supreme Court announced in *Farmer*, "a prison official violates the Eighth Amendment only when two requirements are met." *Farmer*, 114 S.Ct. at 1977. First, the alleged deprivation "must be, objectively, 'sufficiently serious.'" *Farmer*, 114 S.Ct. at 1977, (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)). This means the alleged violation at issue must "pos[e] a substantial risk of serious harm." *Farmer*, 114 S.Ct. at 1977. Second, in order to violate the Eighth Amendment, "a prison official must have a 'sufficiently culpable' state of mind." *Id.* A "sufficiently culpable" state of mind "is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 114 S.Ct. at 1977,

(quoting *Wilson,* 501 U.S. at 302–03). This is a subjective standard.

For purposes of ruling on defendants' motion for summary judgment, I of course must resolve genuine disputes of fact in favor of the plaintiffs as the non-moving parties. When factual disputes are resolved in this manner, plaintiffs have met the first *Farmer* requirement, which presents two issues: whether there is a "substantial risk" of harm, and whether that harm is "serious."

■ This record presents a genuine dispute of fact as to whether there is a "substantial risk" that fire will again erupt about the head of a person executed in Florida's electric chair. Defendants say there is no such risk, and they support this position with sworn expert testimony. Plaintiffs, however, present sworn expert testimony to the contrary. Given the state's history of once having tried but failed to correct the problem—in part in reliance on the same expert on whom it now again relies in part—I certainly cannot rule, as a matter of law, that there is no continuing substantial risk.

Having fire erupt about one's head is "serious harm." Defendants say the condemned person feels no pain, even if there is fire. On this record, this is a disputed issue of fact. But this is not, in any event, controlling. Having fire on or about one's head is "serious harm," whether it occurs with or without pain and whether it occurs before or after the person is dead. Defendants' assertion that the Eighth Amendment proscribes only painful punishment, and thus would allow a state deliberately to set a person afire after rendering him or her unable to feel pain,[14] is barely worthy of comment.[15]

■ The plaintiffs do not fare as well, however, on *Farmer's* second requirement.

On this record, I conclude, as a matter of law, that Mr. Singletary and Mr. McAndrew are not now deliberately indifferent to a significant risk of serious harm, within the meaning of *Farmer.*

■ As the Court held in *Farmer,* a prison official is deliberately indifferent, for purposes of Eighth Amendment analysis, only if he or she "knows of and disregards" the risk of harm at issue. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference." Farmer,* 114 S .Ct. at 1979 (emphasis added). Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," does not establish and Eighth Amendment violation. *Id.* An official is not deliberately indifferent when merely negligent; instead, the official is liable only if reckless.

It is undisputed that, after the Medina execution, the state made a substantial effort to diagnose and correct the problem. The state hired experts to undertake a thorough analysis of the problem and recommend solutions. Plaintiffs say the experts were wrong, and plaintiffs present their own expert analysis in support of this claim. But the responsible state officials were not required to believe plaintiffs' experts rather than their own. The state officials hired ostensibly competent experts and took their advice; this is not the stuff of deliberate indifference.

At least as importantly, the state has litigated the issue of whether its protocols and procedures now will work as intended and has prevailed, securing a favorable ruling in the Florida Supreme Court. Acting in conformance with a ruling of the Florida Supreme Court directly on point might not always establish as a matter of law that a

---

**14.** This was the position taken by defendants, or more accurately by defendants' lawyers, at the pretrial conference of February 13, 1998.

**15.** The absurdity of defendants' position is obvious. Would the Eighth Amendment allow the state to cut off a prisoner's arm, so long as the state anesthetized him first? Clearly not. The references in the reported decisions to "pain" make sense in context, because that was what was involved there. But no court has said the Eighth Amendment would allow barbaric but

painless punishments, and it clearly would not. *See, e.g., Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (stating that even punishments involving no physical pain at all can violate the Eighth Amendment if they involve an affront to human dignity, and holding that stripping an American of citizenship violates the Eighth Amendment (per Chief Justice with Black, Douglas and Whittaker concurring and Brennan concurring as to the result)).

prison official is proceeding without deliberate indifference. But surely an official ordinarily could proceed in conformance with such a Florida Supreme Court decision without being deemed deliberately indifferent—that is, reckless—for having done so.

Plaintiffs, who have the ultimate burden of proof on this issue, have failed to produce any evidence that would support a finding that the defendant state officials actually know (contrary to the sworn opinions of their own experts) that there remains a substantial risk of fire, or that they are proceeding with deliberate indifference to such a risk.[16] Thus the defendants are entitled to summary judgment.

### Conclusion

Because the plaintiffs have failed to provide evidence that the defendant state officials are now deliberately indifferent to the risk of fire during the execution process, defendants are entitled to summary judgment. Accordingly,

IT IS ORDERED:

Defendants' motion for summary judgment (document 51) is GRANTED. The clerk shall enter judgment (a) dismissing without prejudice for lack of jurisdiction the claims of plaintiffs Jones, Swafford, Byrd and Porter that death by electrocution is *per se* unconstitutional, (b) dismissing with prejudice all other claims of plaintiffs Jones, Swafford, Byrd and Porter against defendants Ronald McAndrew, Harry K. Singletary and Robert Butterworth in their official capacities; and (c) dismissing without prejudice, pursuant to plaintiffs' motion for voluntary dismissal, all claims of plaintiffs Jones, Swafford, Byrd and Porter against defendants Ronald McAndrew and Harry K. Singletary in their individual capacities.

---

**16.** Plaintiffs point to unfortunate, some would say callous, comments of elected state officials who have no involvement with the carrying out of electrocutions. Even assuming that those remarks accurately set forth the views of those officials, there is no evidence that Mr. Singletary or Mr. McAndrew have given such remarks any consideration at all in choosing the protocols and procedures that the state will follow in conducting electrocutions. Whatever such elected officials may have said about the process, Mr. Singletary and Mr. McAndrew apparently would have no incentive to botch another execution, and there is no evidence that they are now ignoring their responsibility to eliminate further malfunctions.