**Fred TREESH, et al., Plaintiffs,**

v.

**Bob TAFT, et al., Defendants.**

**No. C-2-99-624.**

United States District Court,
S.D. Ohio,
Eastern Division.

March 20, 2000.

882

Kevin Francis O'Neill, Cleveland–Marshall College of Law, Cleveland, OH, for Plaintiff.

Todd Robert Marti, Ohio Atty. General, Corrections Litigation, Columbus, OH, for Defendant.

## OPINION AND ORDER

KINNEARY, Senior District Judge.

This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Doc. # 6.) For the reasons stated below, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

This case involves a First Amendment challenge to a prison policy that regulates the last statements of condemned prisoners. Compl. at ¶ 1. The policy, known as SOCF W–05–94, prohibits death row inmates from making a final oral statement, audible to spectators, in the moments before their executions. Id. at ¶ 2. Rather, if a death row inmate wishes to make a last statement, he must do so in writing approximately six hours before his scheduled execution. Id.; (Doc. # 6 at Ex. A–2.) If the inmate chooses to write out a statement, the statement will be delivered to the warden and typed. (Doc. # 6 at Ex. A–2.) The policy provides that the typed statement will not be distributed and read until after the inmate is executed. (Id.)

Plaintiffs in this case are two death row inmates who wish to make a final statement in the moments before their executions. Compl. at ¶¶ 7–8. Plaintiffs name as Defendants Bob Taft, Governor of the State of Ohio; Stephen Huffman, Warden of the Southern Ohio Correctional Facility at Lucasvile, Ohio, where all Ohio executions take place; and Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction. Id. at ¶¶ 9–11. All Defendants are sued solely in their official capacities. Id.

Plaintiffs assert two constitutional challenges to the policy. (Doc. # 7 at 2.) The first challenge focuses on the policy itself. Plaintiffs assert that death row inmates have an affirmative constitutional right to make a last oral statement in the moments before execution. According to Plaintiffs, the policy, on its face, violates the First Amendment because it deprives death row inmates of this right and "affords condemned prisoners no opportunity to make a last oral statement, audible to spectators, after being led into the death chamber for their final minutes of life." Compl. at ¶ 2. Plaintiffs' second challenge focuses on the way the policy will be carried out. Plaintiffs assert that the policy violates the First Amendment because the warden "enjoys complete editorial control over the prisoner's statement, with unfettered discretion to change it, cut it, summarize it, or censor it altogether." Id. Thus, Plaintiffs assert both a facial attack and an as-applied challenge to the policy. Plaintiffs seek declaratory and injunctive relief barring Ohio officials from enforcing the policy and requiring them to restore to condemned prisoners the opportunity "to communicate their last words as they stand on the brink of extermination." Id. at ¶ 3.

On July 27, 1999, Defendants filed a motion to dismiss this case for lack of subject matter jurisdiction. (Doc. # 6.) Defendants set forth two independent arguments in support of their motion. First, Defendants assert that this case is moot because prison officials amended the policy in question more than one year ago to eliminate the possibility of any editing or other limitations on the content of the prisoners' last statements. (*Id.* at 2.) Second, Defendants contend that Plaintiffs' claims are not ripe for review because both Plaintiffs are pursuing appeals of their convictions and sentences. (*Id.*) Thus, according to Defendants, it is uncertain when, if ever, either of the Plaintiffs will be in a position to seek to issue their last statements. (*Id.*) That motion is now before the Court for consideration.

## II. STANDARD OF REVIEW

■ Defendants move for dismissal pursuant to Rule 12(b)(1). The Sixth Circuit adopted two standards of dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) depending upon whether the movant makes a facial or factual attack on the plaintiff's complaint. *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A *facial* attack merely questions the sufficiency of the pleadings. In reviewing a facial attack, the Court applies the same standard applicable to Rule 12(b)(6) motions. On the other hand, where a district court reviews a plaintiff's complaint under a *factual* attack, the Court does not presume that the plaintiff's allegations are true. In such cases, the Court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See id.; see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.,* 24 F.Supp.2d 808, 812–13 (1998). The case at bar involves a factual attack to the sufficiency of Plaintiffs' pleadings. Thus, the Court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio*

*Nat'l Life Ins. Co.,* 922 F.2d at 325. It is with this standard in mind that the Court examines Defendants' motion.

## III. ANALYSIS

Article III of the United States Constitution confines the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2. The case or controversy requirement "defines, with respect to the Judicial Branch, the idea of separation of powers on which the Federal Government is founded." *National Rifle Assoc. of America v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997). In order to further define the case or controversy requirement, federal courts developed a series of principles termed "justiciability doctrines." *Id.* The doctrines of mootness and ripeness at issue in this case are a subset of the justiciability doctrines. The Court addresses each of these doctrines in turn.

### A. Mootness

■ The doctrine of mootness requires a live case or controversy when a federal court decides a case. *See Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987); *Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 644 (6th Cir.1997). A case can become moot for one of two reasons: either because "the issues presented are no longer 'live' or because 'the parties lack a cognizable interest in the outcome.'" *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). When a case involves a challenge to a statutory provision, repeal or amendment of the provision while a case is pending "usually eliminates [the] requisite case-or-controversy because a statute [or policy] must be analyzed ... in its present form." *Kentucky Right to Life,* 108 F.3d at 644 (citing *Kremens v. Bartley,* 431 U.S. 119, 129, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977)). When a challenge to a statute or policy is predicated upon the First Amendment, "the Supreme Court has routinely declared

moot those claims effectively nullified by statutory amendment. . . ." *Id.*

In the present case, Defendants submit that this case is moot because prison officials amended the policy in 1998 to eliminate the possibility of any editing or other limitations on the content of prisoners' last statements. (Doc. # 6 at 6.) According to Defendants, the current policy provides that the statements will be typed and distributed as written by the prisoner. (*Id.*) Therefore, Defendants contend that the current policy does not censor prisoners' last words and that Plaintiffs' pleadings incorrectly refer to the now defunct 1997 policy. (*Id.*)

The Court recognizes that the policy in question was first adopted in 1997 and then revised in 1998. The Court also recognizes that Plaintiffs' Complaint refers to the 1997 policy rather than the amended version. Thus, in order to determine the merit of Defendants' mootness argument, the Court must examine the language of both the original and the amended version of the policy at issue in this case.

The Ohio Department of Rehabilitation and Correction ("ORDC") first adopted the policy in question in May of 1997. The 1997 policy provided, in pertinent part, that approximately six hours before a scheduled execution:

> [the][i]nmate will be asked to write his last statement, if any. The draft of the statement will be given to a member of the execution team, who will forward it to the Warden for transcribing and copying. The statement will be read by the Warden in the execution chamber after the execution has been completed, and then by an official media witness [ ] after the media briefing.

(*Id.* at Ex. A–1.)

In February 1998, prison officials revised the policy. These revisions resulted in the current ORDC policy on prisoners' last statements. The revised policy provides, in pertinent part, that approximately six hours before a scheduled execution:

> [the][i]nmate will be asked to write his last statement, if any. The statement will be given to a member of the execution team, who will forward it to the Warden for transcribing and copying. The statement will be provided to the execution witnesses and the media after the execution is completed.

(*Id.* at Ex. A–2.)

After analyzing the text of both the original and the revised versions of the policy, the Court finds Defendants' mootness argument to be without merit. That is, the Court concludes that the essence of Plaintiffs' claims are not moot as a result of the 1998 revisions to the prison policy.

■ As stated previously, Plaintiffs' Complaint sets forth two separate challenges to the prison policy. The first challenge is a facial attack, which focuses on the fact that the policy, on its face, absolutely prohibits a prisoner from speaking his last words. An analysis of both the original and revised versions of the policy reveals that this facial attack has not been rendered moot by the 1998 revisions. Both versions of the policy provide that approximately six hours before a scheduled execution, a condemned prisoner "will be asked to write his last statement, if any," and that the written statement will be distributed only after the prisoner is dead. (*Id.* at Ex. A–1 & A–2.) Thus, under both versions of the policy, a condemned prisoner is completely prohibited from making a last oral statement prior to his execution. Stated differently, "[u]nder both the original and revised version[s] of the [p]olicy, the traditional privilege to make a last dying speech is replaced with an opportunity merely to write out a final statement six hours before the execution." (Doc. # 7 at 7.) Thus, the basis for Plaintiffs' facial attack against the policy—that it prohibits a prisoner from speaking his last words—remains unaffected by the 1998 revision, which only permits a prisoner to write out a final statement. Therefore, because the essence of Plaintiffs' facial challenge remains unchanged by the

revisions, the Court finds that Plaintiffs' facial challenge to the policy is not moot.

Plaintiffs' second attack upon the policy is an "as applied" challenge. This challenge focuses on how the policy will be carried out, rather than the language of the policy itself. (*Id.* at 2.) The essence of Plaintiffs' challenge in this regard focuses on the fact that after the policy was first adopted, "prison officials publicly declared that the warden, in reviewing the condemned's written statement, will scan it for any passage that is 'potentially offensive,' and, upon finding such a passage, will send the statement back to the prisoner with instructions to change it." (*Id.* at 10.)

According to Defendants, the revised version of the policy prohibits any threat of censorship and eliminates the possibility of any editing or other limitations on the content of the prisoners' last statements. (Doc. # 6 at 6.) However, after analyzing both versions of the policy, the Court concludes that neither version prohibits the editing of a prisoner's last statement.

█ Under both versions of the policy, a prisoner must write out his statement and submit it to the warden for transcription. However, neither version of the policy specifically states that the statement must be transcribed exactly as written by the prisoner. The only difference between the two versions lies in how the written statement is received by the witnesses to the execution, not in how it is transcribed. Under the original policy, "[t]he statement will be read by the Warden in the execution chamber after the execution has been completed." (*Id.* at Ex. A–1.) However, under the revised version, "[t]he statement will be provided to the execution witnesses and the media after the execution is completed." (*Id.* at Ex. A–2.) Thus, the main difference between the two versions is that under the revised version, the warden no longer has the responsibility of reading the statement after the execution. Other than this minor difference, the Court cannot see how the revised policy in any way eliminates the threat of censorship. Thus, the Court finds that the essence of Plaintiffs' claim—that the warden may edit the content of a prisoner's written statement—remains unchanged by the 1998 revisions to the policy. Therefore, the Court finds that Plaintiffs' claim is not moot.

Because the Court concludes that the essence of both of Plaintiffs' challenges to the policy remains unchanged by the 1998 revisions to the policy, the Court finds that Plaintiffs' claims are not moot. However, in order to ensure that Plaintiffs' Complaint sets forth accurate factual allegations, the Court **GRANTS** Plaintiffs leave to file an Amended Complaint. If Plaintiffs choose to file an Amended Complaint, they must do so within **30 days of the issuance of this Opinion and Order.**

### B. Ripeness

The doctrine of ripeness also stems from Article III's requirement of an actual case or controversy. This doctrine focuses on the timing of the action and requires that the alleged threatened injury "be certainly impending." *Magaw*, 132 F.3d at 280. That is, "[r]ipeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Id.* Thus, "the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1982)). Moreover, "[a]llegations of possible future injury do not satisfy the requirements of Art. III." *Id.* at 158, 110 S.Ct. 1717.

In the present case, Defendants argue that Plaintiffs' claims are not ripe for review because it is uncertain when, if ever, either of the Plaintiffs will be in a position to seek to issue their last statements. (Doc. # 6 at 8.) Defendants contend that both of these Plaintiffs are pursuing appeals of their convictions and sentences and, as a result, there is no live case or controversy before the Court. (*Id.*) Ac-

cording to Defendants, Plaintiffs will only be in a position to exercise whatever rights they may have to make a final statement if their death sentences are actually executed. (*Id.*)

In support of their position, Defendants rely on *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). However, the holding in *Whitmore* actually undermines Defendants' position. In that case, the petitioner was a death row inmate who brought suit to challenge the death sentence of another inmate, Ronald Gene Simmons. *Id.* at 151, 110 S.Ct. 1717. The petitioner argued that a review of Simmons' sentence would be directly relevant to his own case in the event that his own death sentence were reversed and he were granted a new trial. *Id.* at 156, 110 S.Ct. 1717. The Supreme Court rejected the petitioner's argument and found that he did not have standing to sue. *Id.* at 157, 110 S.Ct. 1717. Specifically, the Supreme Court held that an injury that could only arise if a current death sentence is reversed is insufficient to establish jurisdiction because the likelihood of reversal is too "speculative" and "conjectural." *Id.*

■ In this case, Defendants argue that the issues presented are not ripe for review because it is uncertain whether Plaintiffs will actually be executed because their current sentences could be reversed on appeal. Thus, according to Defendants, any threat that Plaintiffs will be subjected to the execution policy in question is "speculative" and "conjectural." However, the Court finds this argument to be without merit. The Supreme Court in *Whitmore* refused to hear the petitioner's claim because any chance that his conviction would be reversed was too "speculative" to establish jurisdiction. In this case, however, Defendants attempt to rely on such a "speculative" scenario to divest this Court of jurisdiction. The Court rejects this position and finds it to be at odds with the holding in *Whitmore.*

After considering the facts and circumstances of this case, the Court finds that Plaintiffs' claims are ripe for review. In reaching this decision, the Court relies on *Jones v. McAndrew*, 996 F.Supp. 1439 (N.D.Fl.1998). In that case, four death row inmates brought an action against corrections officials to challenge the electrocution procedures used in Florida. *Id.* at 1441. Like Defendants in this case, the defendants in *Jones* argued that the case was not ripe for review because even though the plaintiffs had been sentenced to death, "they [were] not yet under warrant and their executions thus [were] not yet sufficiently imminent to ... make the claim ripe for adjudication." *Id.* The district court rejected the defendants' argument and found that the case was ripe for review. With respect to that finding, the district court noted, in pertinent part:

> Had these plaintiffs waited until they were under death warrant before filing their claims, defendants undoubtedly would have claimed they were here too late and were engaged in an 'obvious attempt at manipulation' and 'abusive delay.' Now, however, when plaintiffs are here early enough to avoid any delay in their executions, defendants say the court should wait to address their claims until the last minute.... The state has adopted the specific protocols and procedures it says it will follow in all future [executions]. These are not merely proposed or transient or evolving procedures; they are, instead, final procedures the state says [it will employ]. The issues raised by this claim are as well presented now, and as susceptible to meaningful review now, as they will be on the eve of plaintiffs' executions. Plaintiffs' challenge to the constitutionality of these procedures is ripe.

*Id.* at 1447 (internal citations omitted).

The Court recognizes that Plaintiffs in this case, like the plaintiffs in *Jones*, are not under death warrant and are still pursuing appeals. However, like the procedure at issue in *Jones*, the execution policy at issue in this case is "not merely transient" or simply an "evolving" policy that

may not actually be employed. Rather, Defendants formally adopted and revised the policy at issue in this case, and the policy is "as susceptible to meaningful review now, as [it] will be on the eve of [P]laintiffs' executions." *Id.* at 1447. Therefore, the Court finds that this case is ripe for review. Accordingly, the Court **DENIES** Defendants' motion to dismiss.

## IV. CONCLUSION

Upon consideration and being duly advised, the Court **DENIES** Defendants' motion to dismiss. Specifically, the Court finds that Plaintiffs' claims are not moot and are ripe for review. As a housekeeping issue, however, the Court **GRANTS** Plaintiffs leave to file an Amended Complaint in order to ensure that their factual allegations are accurate. If Plaintiffs choose to file an Amended Complaint, they must do so within **30 days of the filing of this Opinion and Order.**

**IT IS SO ORDERED.**