714 So.2d 404 (1998)
STATE of Florida ex rel. Robert A. BUTTERWORTH, etc., Petitioner,
v.
Peter KENNY, etc., et al., Respondents.
No. 92343.
Supreme Court of Florida.
April 23, 1998.
Rehearing Denied July 13, 1998.
*406 Robert A. Butterworth, Attorney General, and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, for Petitioner.
Peter Warren Kenny, Capital Collateral Regional Counsel, Southern Region, Martin J. McClain, Litigation Director, and Todd G. Scher, Chief Assistant CCR, Office of the Capital Collateral Regional CounselSouth, Miami, and Gregory C. Smith, Capital Collateral Counsel, Northern Region, and Sylvia W. Smith, Assistant CCCOffice of the Capital Collateral Regional CounselNorth, Tallahassee, for Respondents.
OVERTON, Justice.
Attorney General Robert A. Butterworth petitions this Court for a writ of quo warranto seeking to prevent the Office of the Capital Collateral Regional Counsel for the Southern and Northern Regions (CCRC), respectively, and the other named respondents from representing death row inmates in civil rights lawsuits and to require withdrawal of their representation from all such pending civil cases.[1] We have jurisdiction. Art. V, § 3(b)(8), Fla. Const. The issue in this case is whether CCRC's representation of capital defendants is limited to traditional postconviction relief actions that challenge only the validity of the conviction and sentence or whether that representation includes the authority to bring civil actions that challenge the means and the methods of carrying out a validly imposed sentence. For the reasons expressed, we find that CCRC's representation is limited by statute to actions challenging the validity of a defendant's conviction and sentence such as habeas corpus, coram nobis, and actions established by this Court in Florida Rules of Criminal Procedure 3.850, 3.851, and 3.852. We grant the petition and find that CCRC was not statutorily authorized to initiate the federal civil rights action at issue in this cause.
The relevant facts reflect that in 1997 CCRC initiated a civil rights lawsuit under 42 U.S.C. § 1983 (1994), seeking declaratory and injunctive relief regarding whether the functioning of Florida's electric chair rendered it an unconstitutional method of execution. The State subsequently filed this action, asserting that CCRC is without authority to litigate any civil action on behalf of its clients. After the State filed this action, the federal district court issued summary judgment in the federal civil rights action in favor of the State. See Jones v. McAndrew, 996 F.Supp. 1439 (Fla.N.D. 1998)(Order Granting Motion for Summary Judgment). Although the State has prevailed in that action, we find that we should address the issue raised in this cause because it is of great public importance and likely to recur.[2]
Critical to the issue before us is the construction and interpretation of the authority granted to CCRC under section 27.702, Florida Statutes (1997). That chapter directs CCRC to represent
each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court.
§ 27.702(1)(emphasis added). Section 27.7001 sets forth the legislative intent in carrying forth that representation, providing:
It is the intent of the Legislature to create part IV of this chapter, consisting of ss. 27.7001-27.708, inclusive, to provide for *407 the collateral representation of any person convicted and sentenced to death in this state, so that collateral legal proceedings to challenge any Florida capital conviction and sentence may be commenced in a timely manner and so as to assure the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interests of justice. It is the further intent of the Legislature that collateral representation shall not include representation during retrials, resentencings, proceedings commenced under chapter 940, or civil litigation.

(Emphasis added.)
As noted by the above two sections of chapter 27, in providing collateral representation to defendants sentenced to death, the legislature has clearly expressed its intent that such representation is for the sole purpose of "challenging the legality of the judgment and sentence imposed," and that such representation is not to include "civil litigation."
CCRC argues that the legislative intent expressed in section 27.7001 to restrict CCRC from representing capital defendants in civil litigation has no legal effect. It argues that the intent language merely suggests a legislative policy preference and should not be construed to impose restrictions on CCRC's representation. CCRC contends that a finding that it cannot engage in any civil litigation on behalf of its clients would prevent it from filing and litigating petitions for writs of habeas corpus because such actions are civil in nature. CCRC also argues that any application of section 27.7001 to bar it from engaging in any civil litigation would violate its clients' rights to due process and equal protection because it would constitute an arbitrary application of the law and would prevent it from filing claims that other inmates, if represented by non-CCRC attorneys, could pursue. We reject these arguments.
As CCRC recognized at oral argument, both the United States Supreme Court and this Court have held that defendants have no constitutional right to representation in postconviction relief proceedings. Under the Sixth and Fourteenth Amendments to the United States Constitution, an indigent defendant is entitled to counsel at the state's expense at the trial stage of a criminal proceeding, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and for the initial appeal from a judgment and sentence of the trial court, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). That right, however, does not extend to postconviction relief proceedings. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)(constitution does not require states to provide counsel in postconviction proceedings). As noted by the United States Supreme Court in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), there is a distinction between the need for counsel in preconviction proceedings and the need for counsel in postconviction proceedings. That distinction is based on the fact that during the initial proceedings, the State is presenting witnesses and arguing to a jury in an attempt to strip from the defendant the presumption of innocence; whereas, once the conviction and sentence become final, the presumption of innocence is no longer present and the defendant, in seeking postconviction relief, acts to "upset the prior determination of guilt." 417 U.S. at 611, 94 S.Ct. at 2444.
This distinction holds true even where the defendant has been sentenced to death. Although the United States Supreme Court has stated that death is different and although no person has been executed in this state in recent years who has not had counsel at the time of execution, that Court has determined that there is no right to counsel for postconviction relief proceedings even where a defendant has been sentenced to death. See Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (holding that Finley applies to inmates under sentence of death as well as to other inmates). See also Jones v. Crosby, 137 F.3d 1279 (11th Cir.1998). As the Supreme Court stated in Murray, "[t]he additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case ... are sufficient to assure the reliability of the process by which the death penalty is imposed." *408 492 U.S. at 10, 109 S.Ct. at 2770. See also Hill v. Jones, 81 F.3d 1015, 1025 (11th Cir. 1996)(no constitutional right to postconviction relief counsel in this circuit; ineffective assistance of postconviction relief counsel not cognizable claim); Lambrix v. State, 698 So.2d 247, 248 (Fla.1996)(based on Murray, claims of ineffective assistance of postconviction counsel do not present a valid basis for relief), cert. denied, ___ U.S. ____, 118 S.Ct. 1064, 140 L.Ed.2d 125 (1998). All that is required in postconviction relief proceedings, whether capital or non-capital, is that the defendant have meaningful access to the judicial process. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)(furnishing access to adequate law libraries or adequate assistance from persons trained in the law may fulfill a State's obligation to provide prisoners' right of access to courts), disapproved in part by Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(Bounds disapproved to extent it can be read to require state to enable prisoner to discover grievances and litigate effectively once in court; state need only provide inmates with tools needed to attack sentences directly or collaterally).
Like most other states, Florida, to ensure the credibility and constitutionality of its death penalty process, has provided postconviction representation only in cases where the defendant has been sentenced to death. This statutory right to representation acts to ensure meaningful access to the courts in a complex area of the law and to ensure that our death penalty process is constitutional. As Justice O'Connor noted in her concurring opinion in Murray,

[Bounds] allows the States considerable discretion in assuring that those imprisoned in their jails obtain meaningful access to the judicial process. Beyond the requirements of Bounds, the matter is one of legislative choice based on difficult policy considerations and the allocation of scare legal resources. Our decision today rightly leaves these issues to resolution by Congress and the state legislatures.
492 U.S. at 13, 109 S.Ct. at 2772 (O'Connor, J., concurring) (emphasis added).
In creating CCRC and the right to representation for capital defendants in postconviction relief proceedings, the Florida legislature has made a choice, "based on difficult policy considerations and the allocation of scare legal resources," to limit the representation of CCRC by (1) prohibiting that representation from extending to representation "during trials, resentencings, proceedings commenced under chapter 940, or civil litigation," § 27.7001 (emphasis added); and (2) providing that such representation shall be "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed." § 27.702(1)(emphasis added). In our view, the statute empowers CCRC with the authority to challenge the validity of a capital defendant's conviction and sentence only through traditional postconviction relief proceedings in criminal and quasi-criminal proceedings.
Historically, habeas corpus and coram nobis proceedings were the only means available to challenge the validity of a conviction and sentence.[3] In 1963, this Court enacted Florida Rule of Criminal Procedure 1, which was the predecessor to current Florida Rules of Criminal Procedure 3.850 and 3.851.[4] The *409 rule was almost identical to its federal counterpart and was adopted to
provide a complete and efficacious postconviction remedy to correct convictions where there is a claimed denial of some fundamental or organic right in the course of the trial, and the procedural default of failing to appeal from a judgment of conviction is not equivalent to an express waiver of the constitutional right and will not preclude collateral attack on an unlawful conviction by means of a proceeding brought under the criminal procedure rule.
28 Fla. Jur.2d, Habeas Corpus § 127 (1981)(footnote omitted). The relief provided by the rule was coextensive with that available under habeas corpus or coram nobis proceedings but minimized the difficulties encountered in those proceedings by directing that a motion for relief is to be addressed to the court that imposed the sentence. Id. In the rule, this Court clearly stated that a habeas corpus petition was not to be entertained and that the process set forth in the rule for seeking postconviction relief was to be used unless the remedy by motion under the rule was "inadequate to test the legality of [the] detention." 151 So.2d at 635. Thus, while habeas corpus and coram nobis are still used in the postconviction process, their use is somewhat limited.[5]
Technically, habeas corpus and other postconviction relief proceedings are classified as civil proceedings. Unlike a general civil action, however, wherein parties seek to remedy a private wrong, a habeas corpus or other postconviction relief proceeding is used to challenge the validity of a conviction and sentence. See, e.g., Murray, 492 U.S. at 13, 109 S.Ct. at 2772 (O'Connor, J., concurring) (postconviction proceeding is a civil action designed to overturn a presumptively valid criminal judgment); O'Neal v. McAninch, 513 U.S. 432, 440, 115 S.Ct. 992, 996, 130 L.Ed.2d 947 (1995)(habeas is a civil proceeding involving someone's custody rather than mere civil liability). Consequently, postconviction relief proceedings, while technically classified as civil actions, are actually *410 quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction. We conclude that the legislature, in expressing its intent to prohibit CCRC from engaging in civil litigation on behalf of capital defendants, meant only to prohibit CCRC from engaging in civil litigation other than for the purpose of instituting and prosecuting the traditional collateral actions challenging the legality of the judgment and sentence imposed.
A federal civil rights action filed under section 1983 for a declaratory judgment or for injunctive relief is a civil action that does not test the legality of the conviction and sentence. As the federal district court judge made clear in his summary judgment in the section 1983 case at issue here, that action involved the question of whether the capital defendants were "being subjected to unconstitutional punishment not imposed as part of their sentence." Jones v. McAndrew, 996 F.Supp. at 1443. In specifically distinguishing the civil rights action from a habeas corpus proceeding, he stated that
the claim at issue here is far more analogous to the kind of claim properly (and routinely) brought under § 1983 than to a habeas action. This is not a challenge to any plaintiff's conviction or to the sentence of death. This is not even a challenge to the proposed carrying out of the sentence by electrocution. This is, instead, a challenge to the state's procedures that have in the past led to fires during the electrocution processa challenge not to the sentence but to the conditions under which the state proposes to carry it out.

....
Thus, this is not a case where plaintiffs challenge their convictions or sentences.
Id. at 1443 (emphasis added). Not only did the district judge find that the federal civil rights action was not a challenge to the capital defendants' convictions or sentences, he specifically stated that, if it were, he would have no jurisdiction to hear the cause because "plaintiffs have failed to exhaust state judicial remedies (as required in habeas cases) and have failed to meet the standards for, or to obtain permission to file, a second or subsequent habeas petition." Id. at 1442.[6] Because we agree that the federal civil rights action is not a challenge by CCRC to the legality of the capital defendants' judgments and sentences, we find that CCRC has no authority to represent the defendants in that action.
We reject CCRC's argument that this limitation on its authority constitutes an arbitrary application of law or a violation of capital defendants' equal protection rights. To the contrary, we conclude that the limitation is a reasonable allocation of resources. As the United States Supreme Court noted in Murray, a state might
quite sensibly decide to concentrate the resources it devotes to providing attorneys for capital defendants at the trial and appellate stages of a capital proceeding. Capable lawyering there would mean fewer colorable claims of ineffective assistance of counsel to be litigated on collateral attack.
492 U.S. at 11, 109 S.Ct. at 2771. Certainly, if the legislature can determine whether to provide capital defendants with postconviction counsel, it can place reasonable restrictions on such representation without those restrictions being labeled arbitrary. We find CCRC's equal protection argument to be equally untenable; the fact that a capital defendant with private counsel could pursue actions without limitation is no different from the fact that noncapital defendants who are afforded no statutory right to postconviction counsel could likewise hire private counsel to pursue such claims. See § 27.51, Fla. Stat. (1997) (providing no authority for public defenders to represent noncapital defendants with postconviction representation). We have previously upheld similar restrictions on the representation of indigents by public defenders. See, e.g., State ex rel. Smith v. Brummer, 443 So.2d 957 (Fla.1984)(public defender is not authorized by statute or rule to accept appointment by federal judge to represent indigent defendants in federal habeas corpus proceedings).
*411 Accordingly, for the reasons expressed, we grant the State's petition and issue a writ of quo warranto directing that CCRC has no authority to represent capital defendants in the federal civil rights action at issue and has no authority to represent capital defendants in any civil action not directly challenging the legality of the judgments and sentences of such defendants.
It is so ordered.
SHAW, HARDING and WELLS, JJ., concur.
KOGAN, C.J., and ANSTEAD and PARIENTE, JJ., concur in result only.
NOTES
[1] Just before this action was filed, CCRC filed an "all-writs" petition/petition for writ of prohibition with this Court seeking to enjoin Butterworth from claiming in the federal civil rights action that CCRC had no authority to bring that action on behalf of his clients. See Kenny v. Butterworth, No. 92,331 (Fla. petition filed Feb 11, 1998). Our resolution of this case renders that action moot.
[2] Holly v. Auld, 450 So.2d 217, 223 n. 1 (Fla. 1984)(well settled that mootness does not destroy appellate court's jurisdiction when questions raised are of great public importance or likely to recur).
[3] The distinction between these two types of writs is set forth in American Jurisprudence as follows:

Historically the writ of habeas corpus is designed to secure the release of one held in custody, where the legal right of such custodian to hold the petitioner is challenged, whereas the writ of coram nobis applies to situations in which the petitioner is held after judgment and sentence by due process of law, and the claim is not that petitioner is unlawfully detained but that an error occurred in the process and judgment. The grounds upon which a court may issue a writ of error coram nobis are more narrowly restricted than those which allow relief by habeas corpus.
18 Am.Jur.2d, Coram Nobis and Allied Statutory Remedies § 2 (1985)(footnotes omitted).
[4] The opinion adopting the rule provided as follows:

The following rule of criminal procedure is hereby approved and adopted, to wit:
CRIMINAL PROCEDURE RULE NO. 1.
A prisoner in custody under Sentence of a court established by the Laws of Florida claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or Laws of the United States, or of the State of Florida, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
A motion for such relief may be made at any time.
Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting attorney of the court, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.
The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.
An appeal may be taken to the appropriate appellate court from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
This rule shall not apply to municipal courts.
The foregoing rule shall become effective upon the filing of this order.
It is so ordered.
In re Criminal Procedure Rule No. 1, 151 So.2d 634, 635 (Fla.1963).
[5] Generally, a petition for writ of habeas corpus is used to challenge the effectiveness of appellate counsel. See, e.g., Hardwick v. Dugger, 648 So.2d 100 (Fla.1994). A petition for a writ of error coram nobis is filed to bring to the attention of a court facts that, if known at the time judgment was rendered, would have prevented rendition of the judgment. See, e.g., Jones v. State, 591 So.2d 911 (Fla.1991). Writs of error coram nobis have been abolished in federal court. See Fed. R.Civ.P. 60(b).
[6] Notably, the district court dismissed at the beginning of the federal civil rights proceeding that portion of CCRC's complaint asserting that electrocution is an unconstitutional method of carrying out the death sentence. Jones, 996 F.Supp. at 1443.