933 So.2d 1192 (2006)
Dean KILGORE, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D05-842.
District Court of Appeal of Florida, Second District.
June 21, 2006.
Rehearing Denied August 3, 2006.
William M. Hennis, III, Litigation Director, and Neal A. Dupree, of Law Office of the Capital Collateral Regional Counsel, Ft. Lauderdale, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine V. Blanco, Assistant Attorney General, Tampa, for Respondent.
SHARP, W., J., Associate Judge.
An attorney from the Office of the Capital Collateral Representative (CCRC), which had been appointed to represent Kilgore to collaterally attack his 1994 first-degree murder conviction and death sentence,[1] sought to appeal the circuit court's *1193 order which was entitled "Order Dismissing Motion to Vacate Judgment of Conviction and Sentence With Special Request for Leave To Amend." The Order did not dismiss the collateral proceeding, but rather dismissed CCRC from its representation of Kilgore in that proceeding because CCRC was attempting to challenge the validity of Kilgore's 1978 first-degree murder conviction which had been used as an "aggravating factor" in the penalty phase of his 1994 case. Accordingly, this court has elected to convert the appeal to a proceeding in certiorari.
After hearing oral argument in this case, we grant the writ and certify a question of great public importance to the Florida Supreme Court[2] because the ultimate answer to this question should be addressed by the court that deals with death cases:
ARE COUNSEL APPOINTED TO PROVIDE COLLATERAL REPRESENTATION TO DEFENDANTS SENTENCED TO DEATH, PURSUANT TO SECTION 27.702, AUTHORIZED TO BRING PROCEEDINGS TO ATTACK THE VALIDITY OF A PRIOR FIRST-DEGREE MURDER CONVICTION THAT WAS USED AS A PRIMARY AGGRAVATOR IN THE DEATH SENTENCING PHASE?
The statute is not clear on the extent of CCRC's representation under the unique circumstances of this case. Section 27.702(1), Florida Statutes, provides:
The capital collateral regional counsel shall represent each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such persons in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. The capital collateral regional counsel and the attorney appointed pursuant to s. 27.710 shall file only those post-conviction collateral actions authorized by statute. (emphasis supplied)
Section 27.711(11), Florida Statutes, provides:
An attorney appointed under s. 27.710 [Registry of attorneys applying to represent persons in post-conviction capital collateral proceedings; certification of minimum requirements; appointment by trial counsel][3] to represent a capital defendant may not represent the capital defendant during a retrial, a resentencing proceeding, a proceeding commenced under chapter 940, a proceeding challenging a conviction or sentence other than the conviction and sentence of death for which the appointment was made, or any civil litigation other than habeas corpus proceedings. (emphasis supplied)
The above language does not explicitly deal with the situation where, as here, a previous conviction is the primary aggravator for imposition of the death penalty, and to challenge the death penalty, the previous conviction must be challenged.
The facts giving rise to this controversy are not in dispute. In 1978, Kilgore was convicted of three violent felonies: first degree murder, kidnapping and trespassing with a firearm. The jury found that he illegally entered the residence of a man and a woman and their children, at night, while armed with a firearm. He shot the man to death and kidnapped the woman, taking her to an orange grove where he *1194 kept her the rest of the night. The court sentenced him to two life sentences, with 25 year mandatory minimums. He did not seek post-conviction relief.
In 1989, while serving his life sentences in the Polk County Correctional Institution, Kilgore stabbed and killed another prisoner, allegedly his homosexual lover. He was charged with first-degree murder and possession of contraband by an inmate. He pled nolo contendere to both charges. However, he was permitted to withdraw the plea, and he was tried by a jury. In 1994, he was convicted on both counts and sentenced to death.
During the penalty phase, the 1978 first degree murder conviction was used as a major aggravator favoring the death penalty, and during the sentencing phase, the woman victim of the 1978 kidnapping testified against Kilgore. The trial court found two aggravating circumstances: that Kilgore was under sentence of imprisonment at the time he committed the murder; and that Kilgore had previously been convicted of felonies involving use or threat of violence to persons  murder, trespass with a firearm, and kidnapping (the 1978 case). The court also considered older prior convictions involving less serious offenses  assault with intent to commit murder, aggravated assault, and resisting arrest with force. However, the judge included in his sentencing order a description of the first degree murder case by way of explaining the "magnitude of the prior murder." And, in imposing the death sentence, the judge wrote that "[t]o sentence Mr. Kilgore to anything but death would be tantamount to giving him a license to kill." Kilgore v. State, 688 So.2d 895, 897 (Fla. 1997). Counsel for CCRC was appointed to represent Kilgore after his appeals had been exhausted.[4]
During public records litigation in the 1994 case, at a status hearing on August 20, 2001, some 1978 "state attorney notes" of interviews with the kidnapping victim in that case and her son, an eyewitness to the murder who also testified, were turned over to Kilgore in open court. They had been claimed as exempt by the State Attorney and were previously not made available to counsel for Kilgore. Comparing the notes with other existing statements by these witnesses, they allegedly reveal impeachment material pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)(discovery violation is violation of due process).
CCRC believed that in order to collaterally attack Kilgore's 1994 death sentence, it had to try to invalidate the major aggravator presented in the sentencing phase, i.e., the 1978 first degree murder, kidnapping, and trespass with a firearm convictions. CCRC served motions pursuant to Florida Rule of Criminal Procedure 3.850 to vacate and set aside the 1978 murder conviction. The basis of the motion was the allegedly newly discovered evidence composed of notes of interviews of prosecuting attorneys in the 1978 case with the kidnapping victim and an eyewitness that had not previously been disclosed. CCRC sought an evidentiary hearing. At that point, the state questioned CCRC's authority to seek to invalidate the 1978 conviction.
The state submits that, although CCRC's representation was terminated, the trial court did not address or preclude Kilgore from proceeding on his own to assert a collateral challenge to his 1978 non-capital conviction. Kilgore could do so pro se, or ask the trial court to appoint post-conviction counsel in a non-capital case.[5] The state candidly admits that collateral *1195 counsel must be afforded the opportunity to challenge a death sentence by showing that the use of a prior conviction as an aggravator is improper. Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). Had the 1978 conviction already been set aside, it would have been proper for CCRC to raise this issue in a collateral proceeding. Johnson v. Mississippi.
However, the state maintains that the Legislature has made it clear, as a policy matter, that CCRC is limited to challenging only the conviction and sentence of death row inmates, and that CCRC may not seek to collaterally attack other criminal convictions. This is primarily because the state is not constitutionally required to provide counsel in collateral proceedings seeking to attack the validity of a criminal conviction,[6] and if counsel is provided pursuant to chapter 27, the Legislature may limit and qualify the representation provided at state expense. The Legislature has clearly chosen to exclude from such state funded representation civil litigation, which includes collateral attacks on other criminal convictions, because of its concerns about exhausting the public treasury. However, based on our research, the rarity of this issue would not translate into a significant concern for the public treasury.
CCRC argues that the language of section 27.711(1)(c) clearly[7] permits it to seek to invalidate a prior criminal conviction, as part of its responsibility to collaterally challenge a death sentence. That is particularly true under the circumstances involved in this case, where the prior murder conviction was used as the primary, or one of the primary aggravators supporting the death sentence, and the witnesses and circumstances of the prior conviction and the sentencing are linked.
As a practical matter, we recognize that the presentation of a prior first degree murder conviction as an aggravator in a capital sentencing proceeding is major, and if invalid, its consideration is prejudicial.[8] Convictions for less serious criminal offenses pale in significance. However, in order to challenge the murder conviction aggravator, the prior judgment must have been set aside.[9] That is the course that CCRC was attempting to take, and it is consistent with ABA Guidelines.[10]
*1196 Although the ABA Guidelines for the Appointment and Performance in Death Penalty Cases have not been adopted in this state, the U.S. Supreme Court has cited "time and again, [to] the standards for capital defense work articulated by the American Bar Association" as guides. See Smith v. Mullin, 379 F.3d 919, 941 (10th Cir.2004), citing Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also, Commonwealth v. Williams, 581 Pa. 57, 863 A.2d 505, 528 n. 6 (2004) (Saylor, J., dissenting) (U.S. Supreme Court has referenced Guidelines articulating prevailing norms for effective counsel); Rompilla v. Beard, 545 U.S. 374 n. 3, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (reasonable efforts include obtaining a readily available court file on a defendant's prior conviction); Lundgren v. Mitchell, 440 F.3d 754, 770 (6th Cir.2006) (capital defense counsel has an affirmative duty to, inter alia, conduct an appropriate investigation into potential mitigating factors); Hamblin v. Mitchell, 354 F.3d 482, 486-487 n. 2 (6th Cir.2003) (section 10.7 contains ten pages about counsel's obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty).
The state relies on Butterworth v. Kenny, 714 So.2d 404 (Fla.1998),[11] as precedent for limiting the scope of CCRC's representation of death row inmates. In that case, the Attorney General sought a writ of quo warranto to prevent CCRC from bringing a federal civil rights lawsuit challenging the means by which the sentence of death was to be carried out. Justice Overton said the representation of CCRC counsel should be limited to "traditional post-conviction relief actions that challenge only the validity of the conviction and sentence. . . ." The court did not define what is meant by "traditional collateral actions challenging the legality of the judgment and sentence." However, it distinguished post-conviction relief proceedings used to challenge the validity of a conviction and sentence, which it categorized as "quasi-criminal in nature," from federal civil rights actions filed under section 1983. But, it did not address the issue involved in this case.
The case before us involves a quasi-criminal proceeding, seeking to attack a death sentence imposed in a criminal case. The statute expressly permits CCRC to challenge the sentence of death as well as the conviction. In this case, the only method of attacking the sentence of death is to attack the primary aggravator, a prior first degree murder conviction. This is a traditional and well-accepted method used to challenge death sentences.[12]
In Kenny, the court also said that the Legislature can determine whether to provide convicted capital defendants with counsel and that in so doing, it can place "reasonable restrictions on such representation." [cite Kenny] Since the Legislature has chosen to provide death sentenced defendants *1197 with counsel through CCRC, it is neither logical nor reasonable to deny it the authority to challenge a death sentence by bringing a well-established, quasi-criminal procedure designed to do so.
In Olive v. Maas, 811 So.2d 644 (Fla. 2002), the court held that the capping of fees for an attorney who represented death row inmates and preventing him from representing them, was invalid because it deprived inmates of effective assistance of counsel. The court affirmed its views as stated in Remeta v. State, 559 So.2d 1132 (Fla.1990), that if the Legislature provides a right to counsel in proceedings not constitutionally mandated, the statutory right carries with it the right to have effective assistance of counsel.
We conclude that the statutes providing representation to death sentenced inmates should be interpreted to encompass the right to effective assistance of counsel in collateral proceedings such as this one, to attack both the conviction and the death sentence.[13] If a primary aggravating circumstance is a prior first-degree murder or violent felony conviction, and if there are valid grounds to seek to invalidate it, CCRC should, as a matter of effective representation, pursue that course. The statute itself directs CCRC to challenge a death sentence and seeking to invalidate a prior conviction in this context is a direct attack on the sentence. However, even if the statute was intended to prevent CCRC from representing the inmate in such collateral proceedings, such a limitation would not be permitted because it would deny the inmate effective assistance of counsel. Remeta. See also Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (statute giving trial judge opportunity to deny defense closing argument denied defendant effective assistance of counsel under the Sixth Amendment of the U.S. Constitution); Faretta v. California, 422 U.S. 806, 817, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (certain rights, including effective assistance of counsel are basic to adversary system of criminal justice and are part of "due process of law" guaranteed by the Fourteenth Amendment).
We neither suggest nor attempt to rule on whether or not Kilgore's action is time barred, or whether it properly states a ground for relief for an evidentiary hearing. Those matters are not ripe for our consideration at this juncture.
Accordingly, we quash the order reviewed, remand for further proceedings, and certify a question of great public importance to the Florida Supreme Court.
Petition for Writ of Certiorari Granted; Order QUASHED; Question CERTIFIED.
SAWAYA, T.D., Associate Judge, concurs.
GRIFFIN, J.R., Associate Judge dissents with opinion.
GRIFFIN, J.R., Associate Judge, dissenting.
I concede at the outset that my understanding of death penalty law and the function of the capital collateral representative is thin. If it were up to me, we *1198 would just pass this case through to the supreme court. The Florida supreme court will rightly not be much influenced by what I have to say on this subject, so I will try to explain why I think the majority opinion is wrong in as few words as possible.
The majority acknowledges that "the State is not constitutionally required to provide counsel in collateral proceedings seeking to attack the validity of a criminal conviction, and if counsel is provided pursuant to chapter 27, the Legislature may limit and qualify the representation provided at state expense." The majority also agrees that the legislature has "clearly chosen to exclude from such state funded representation civil litigation, which includes collateral attacks on other criminal convictions, because of its concerns about exhausting the public treasury."
Indeed, section 27.711(11), Florida Statutes, quoted in the majority opinion is clear:

An attorney appointed under s. 27.710 [Registry of attorneys applying to represent persons in post-conviction capital collateral proceedings; certification of minimum requirements; appointment by trial counsel] to represent a capital defendant may not represent the capital defendant during a retrial, a resentencing proceeding, a proceeding commenced under chapter 940, a proceeding challenging a conviction or sentence other than the conviction and sentence of death for which the appointment was made, or any civil litigation other than habeas corpus proceedings.
(Emphasis added). Because, however, the legislature did not reinforce this apparently categorical prohibition by specifying that no representation is authorized for "a proceeding challenging a conviction or sentence other than the conviction and sentence of death for which the appointment was made" even if such a conviction was used as a primary aggravator, the statute is unclear and requires construction. But "no" means "no." Counsel may not represent the defendant in those identified proceedings. The failure to say "not even if. . ." does not make the statute any less categorical. The statute is clear and the legislative intent is obvious.
The majority concludes, however, that the statute "should be interpreted" to authorize CCRC to appear in other cases to collaterally attack those convictions if those convictions are "primary aggravating circumstances." But why should it? As the State argues, there are well-established procedures for collaterally attacking, and, if warranted, for obtaining counsel to collaterally attack final judgments of criminal conviction. Why should an inmate condemned to death be given what no other convicted criminal is given? The answer cannot be that counsel cannot provide "effective representation" unless he is authorized to appear in prior cases to collaterally attack the convictions used as aggravating factors in sentencing. The Florida criminal statutes are awash with aggravators based on prior criminal convictions, but we have never recognized the duty to attack the prior convictions as a component of "effective representation." The notion that "death is different" does not provide an adequate answer. That counsel for a defendant whose sentence is enhanced to life in prison based on prior convictions may not collaterally attack the prior convictions as part of his representation, but counsel representing a criminal sentenced to death is ineffective if he fails to do so makes no sense to me. The notion that, by providing collateral representation to criminals sentenced to death, the legislature bound itself as a matter of constitutional law to provide counsel to collaterally attack prior convictions used as aggravators at sentencing simply has no basis.
*1199 I also cannot see how the majority's effort to limit its decision to prior convictions for murder that are primary aggravators makes any sense. First of all, to limit the analysis to a prior "murder" conviction is arbitrary. Section 921.141(5), Florida Statutes (2005), which identifies the statutory aggravators, includes any violent felony. And how will we be able to determine that the particular aggravator was a "primary" one? Section 921.141 does not require or even permit a ranking of aggravators and in the cases I have looked at, the trial court has not suggested a relative weight to be given one aggravator over another. Besides, given the nature of the aggravators, they all seem primary. Can CCRC handle a collateral attack on prior convictions for crimes that are not murder but which are a "primary" aggravator? What about prior murder convictions that are a "secondary" aggravator? Can this really be driven by what the sentencing judge says about the prior conviction? If it is "ineffective assistance" for capital collateral counsel not to collaterally attack prior convictions, doesn't it have to be "ineffective assistance" if trial counsel in the original trial does not mount the same attack on prior convictions? Suppose the prior "primary," "murder" conviction was rendered in another state? What does "effective assistance" require then? Suppose the "primary" aggravator was the defendant's status on community control or felony probation? See § 921.141(5)(a), Fla. Stat. (2005). Does effective assistance require an attack on the validity of such supervision?
No matter who is right or wrong, the majority has put forward a challenging proposition, and I look forward to the high court's decision.
NOTES
[1] The verdict and sentence were affirmed by the Florida Supreme Court. See Kilgore v. State, 688 So.2d 895 (Fla.1996).
[2] Fla. Rule App. P. 9.030(a)(2)(A)(v).
[3] Reference to this section is not material in this case because the court has held that CCRC counsel and attorneys appointed by the registry have the same restrictions on the scope of representation. Olive v. Maas, 811 So.2d 644 (Fla.2002).
[4] Kilgore v. State, 688 So.2d 895 (Fla.1996).
[5] We agree with Justice Anstead that representation by an attorney is essential to ensure effective presentation of capital post-conviction counsel. And, leaving the decision on a case-by-case basis to appoint counsel leads to inconsistent results. Arbelaez v. Butterworth, 738 So.2d 326, 330 (Fla.1999) (Anstead, J., specially concurring)
[6] See Butterworth v. Kenny, 714 So.2d 404 (Fla.1998); Graham v. State, 372 So.2d 1363 (Fla.1979).
[7] Section 27.711(1)(c) provides:

(c) "Postconviction capital collateral proceedings" means one series of collateral litigation of an affirmed conviction and sentence of death, including the proceedings in the trial court that imposed the capital sentence, any appellate review of the sentence by the Supreme Court, any certiorari review of the sentence by the United States Supreme Court, and any authorized federal habeas corpus litigation with respect to the sentence. The term does not include repetitive or successive collateral challenges to a conviction and sentence of death which is affirmed by the Supreme Court and undisturbed by any collateral litigation.
[8] Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988).
[9] See Hall v. Moore, 792 So.2d 447 (Fla.2001); Eutzy v. State, 541 So.2d 1143 (Fla.1989).
[10] See ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Rev. ed. Feb.2003), 10.7 Investigation; 10.8 The Duty to Assert Legal Claims; and 10.15.1.E.4. Duty of Post-Conviction Counsel. See also 1.1, setting forth a national standard of practice for the defense of capital cases to ensure high quality legal representation. These Guidelines are a "collection of professional norms." Clark v. Mitchell, 425 F.3d 270, 293 (6th Cir.2005) (Merritt, J., dissenting).
[11] Both the state and Kilgore cite to Butterworth v. Jennings, 819 So.2d 140 (Fla.2002) as supportive of their arguments. However, there is no opinion in this case, and thus it has no precedential value.
[12] Investigations into mitigating evidence should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor. ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (Rev. ed. Feb.2003, 10.8, Duty to Assert Legal Claims, and such obligations are extended to post-conviction counsel. 10.15.1.E.4. Failure to pursue such a well-established course of action can be used to assert an ineffective assistance of counsel claim, if there was a right to counsel in this context. See Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).
[13] Criminal statutes should be construed liberally in favor of persons charged with a crime. See Perkins v. State, 576 So.2d 1310 (Fla.1991); Ferguson v. State, 377 So.2d 709 (Fla.1979); State v. Merritt, 714 So.2d 1153, 1154 (Fla. 5th DCA 1998); Quinn v. State, 662 So.2d 947 (Fla. 5th DCA 1995); Ivory v. State, 588 So.2d 1007 (Fla. 5th DCA 1991). The rule of lenity requires that when a statute is susceptible of differing constructions, it must be construed most favorably to the accused. § 775.021(1), Fla. Stat. (2005). A reasonable interpretation must be given to statutes in light of the rule that they should favor persons charged with a crime. State v. Merritt.