CANADY, C.J.,
concurring in part and dissenting in part.
I concur with the majority opinion to the extent that it affirms the denial of Darling’s postconviction motion and partially *456 denies his petition to invoke all writs jurisdiction. But I dissent from the majority’s conclusion that Capital Collateral Regional Counsel (CCRC) attorneys are authorized to pursue method-of-execution claims in federal court by way of section 1983 of title 42, United States Code (2006). I would deny all relief sought by Darling.
In reaching its conclusion regarding the scope of CCRC representation, the majority rejects our well-reasoned precedent in State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998) — precedent which is solidly grounded in the text of sections 27.7001 and 27.702(1), Florida Statutes (2007). Section 27.7001 sets forth the legislative intent to provide “collateral representation” for “collateral legal proceedings to challenge any Florida capital conviction and sentence.” Section 27.702(1) provides that CCRC representation is “for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed” on persons under death sentences. The majority’s view that CCRC may litigate method-of-execution claims in 1983 actions' — ■ actions which do not challenge a conviction or sentence — cannot be reconciled with these unequivocal statutory provisions.
The justification offered by the majority for rejecting Kenny involves a serious misreading of the basis we actually articulated for that decision. And it involves a serious misreading of the federal law providing counsel for indigent persons under state death sentences. Contrary to the view stated by the majority here, Kenny was based on our conclusion that section 1983 actions raising method-of-execution claims are qualitatively different than traditional postconviction proceedings challenging the validity of convictions and sentences. Contrary to the majority’s conclusion that federal law compels the interpretation of state law adopted by the majority, the federal law in question does nothing to compel the State of Florida to do anything.
I. KENNY CORRECTLY HELD THAT CCRC IS PROHIBITED FROM LITIGATING SECTION 1983 METHOD-OF-EXECUTION CLAIMS BECAUSE SUCH CLAIMS DO NOT CHALLENGE THE VALIDITY OF CONVICTIONS AND SENTENCES
The majority asserts that Kenny held habeas proceedings to be outside the scope of the proscription on “civil litigation” under section 27.7001 and to be within CCRC’s scope because habeas proceedings are “collateral actions.” Majority op. at 453-54. The majority also asserts that Kenny was based upon the “now incorrect assumption” that method-of-execution claims could be brought in federal habeas proceedings. Id. Both assertions flow from a demonstrably incorrect reading of Kenny — a reading which gives short shrift to the statutory text which was explicated in Kenny and which remains authoritative.
The decision in Kenny turned on two points. First, the Court concluded that “the legislature, in expressing its intent to prohibit CCRC from engaging in civil litigation on behalf of capital defendants, meant only to prohibit CCRC from engaging in civil litigation other than for the purpose of instituting and prosecuting the traditional collateral actions challenging the legality of the judgment and, sentence imposed.” 714 So.2d at 410 (emphasis added). This conclusion rests on the express provision of section 27.702(1) authorizing CCRC to participate in “collateral actions” “for the sole purpose of ... challenging the judgment and sentence imposed against” a CCRC client. Second, the Court concluded that “[a] federal civil rights action filed under section 1983 for a declaratory judgment or for injunctive relief is a civil action that does not test the *457 legality of the conviction and sentence.” Id. (emphasis added). This conclusion rests on the essential nature of the relief sought in a section 1983 action.
Based on these two points, the Court articulated its holding on the issue presented: “Because we agree that the federal civil rights action is not a challenge by CCRC to the legality of the capital defendants’ judgments and sentences, we find that CCRC has no authority to represent the defendants in that action.” Id. (emphasis added). The holding in Kenny thus was predicated on the nature of the relief sought in a 1983 action raising a method-of-execution claim.
The reasoning of the Kenny Court was crystal clear: CCRC was precluded from participating in section 1983 method-of-execution challenges because such proceedings do not challenge the conviction or sentence and thus are unlike traditional postconviction claims which CCRC was established to litigate. Nothing in Kenny suggests that CCRC could properly participate in all legal proceedings that could broadly be considered “collateral” to a death sentence. Kenny recognizes that such a broad reading of the scope afforded CCRC cannot be reconciled with the plain meaning of section 27.702(l)’s provision that CCRC representation of its clients is “for the sole pmpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person[s].” (Emphasis added.)
The decision in Kenny interpreting the relevant provisions of chapter 27 did not rest on any assumption by the Court about the proper procedural vehicle for mounting a method-of-execution challenge in federal court. The Kenny Court certainly said nothing to suggest that federal law would permit or require the litigation of such claims in habeas proceedings. Indeed, in its discussion of why a method-of-execution claim does not constitute a challenge to the validity of a conviction or sentence, the Court — quoting the federal district court decision in Jones v. McAndrew, 996 F.Supp. 1439, 1443 (N.D.Fla.1998) — indicated that a method-of-execution challenge “is far more analogous to the kind of claim properly (and routinely) brought under § 1983 than to a habeas action” because such a challenge “is not a challenge to any plaintiffs conviction or to the sentence of death.” Kenny, 714 So.2d at 410. So there is no justification for the majority’s conclusion that Kenny must be revisited because the Kenny Court assumed that the door was open in federal habeas proceedings for method-of-execution challenges.
The majority also attempts to avoid the force of Kenny’s reasoning by making the unexplained assertion that method-of-exe-eution challenges are an attack on “an integral part of the judgment and sentence.” Majority op. at 446. There are two problems with this assertion.
First, it is a bare assertion without any support in our caselaw. We have never characterized a method-of-execution challenge as an attack on “an integral part of the judgment and sentence” imposed in a death case. Second, if a method-of-execution claim is deemed to be an attack on a judgment or sentence, then federal case-law precludes its determination outside the habeas context. Claims challenging a conviction or sentence “fall within the ‘core’ of habeas corpus and are thus not cognizable when brought pursuant to § 1983.” Nelson v. Campbell, 541 U.S. 637, 643, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004).
The majority is thus on the horns of a dilemma. A method-of-execution claim is within CCRC’s scope only if it is a challenge to the validity of a sentence. But if a method-of-execution claim is a challenge *458 to the validity of a sentence, it is not cognizable in a section 1983 action.
In reality, of course, there is no dilemma here. The law is clear that a method-of-execution claim like the claim Darling seeks to bring is not an attack on the validity of the sentence of death: “A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the ‘fact’ or ‘validity’ of the sentence itself — by simply altering its method of execution, the State can go forward with the sentence.” Nelson, 541 U.S. at 644, 124 S.Ct. 2117. Florida law specifically provides for carrying out death sentences “by any constitutional method of execution” if execution by electrocution or lethal injection is held to be unconstitutional. § 922.105(3), Fla. Stat. (2009). Similarly, if a particular protocol for execution by lethal injection is invalidated, the State can employ another lethal injection protocol and proceed with execution.
The Supreme Court’s recognition of circumstances where a broadly framed “constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself’ provides cold comfort for the majority’s position here. Majority op. at 451 (quoting Nelson, 541 U.S. at 644, 124 S.Ct. 2117). There is no suggestion that Darling seeks to litigate such a broadly framed challenge; his focus, instead, is on “lethal injection as currently administered in Florida.” The Florida statutory scheme would in any event not be amenable to such a challenge. But if it were and Darling sought to challenge the validity of his sentence in that way, he could not assert that claim — a claim falling within the “core” of habeas corpus — -in a section 1983 proceeding. Both Nelson and Hill make clear that a challenge to the validity of a death sentence cannot be litigated in a section 1983 action.
The majority is correct that in Diaz v. State, 945 So.2d 1136 (Fla.2006), we stated that a method-of-execution challenge could be brought in a federal habeas proceeding despite the United States Supreme Court’s holding in Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006). But the discussion in Diaz on that question was quite beside the point on the issue actually raised in Diaz — the constitutionality of section 27.702’s limitation on CCRC representation. When and how a particular claim can be brought in federal court has no bearing on whether a person under sentence of death has a due-process right to a state-provided lawyer to pursue the claim after the conviction and death sentence are final. The majority itself recognizes that there is no such due-process right. See majority op. at 455 (quoting State v. Kilgore, 976 So.2d 1066, 1068 (Fla.2007)). And the discussion in Diaz regarding the viability of method-of-execution challenges in federal habeas proceedings played no part in the Court’s reasoning concerning the statutorily authorized scope of CCRC representation. In sum, nothing said in Diaz calls into question the reasoning of Kenny on the issue of statutory interpretation regarding the scope of CCRC representation.
II. FEDERAL LAW IMPOSES NO OBLIGATION ON CCRC TO LITIGATE SECTION 1983 METHOD-OF-EXECUTION CLAIMS
The majority attempts to buttress its view concerning the need to recede from Kenny by asserting that we are “compelled by federal law” to permit CCRC representation in section 1983 actions raising method-of-execution challenges. Majority op. at 454. The majority reasons that section 1983 method-of-execution chai- *459 lenges are covered by section 3599, of title 18, United States Code (2006), and that section 3599 requires CCRC counsel appointed under its provisions to represent their clients in any proceeding covered by section 3599. This line of reasoning is flawed in two fundamental respects.
First, despite the majority’s assertion that it is “abundantly clear” that section 1983 method-of-execution challenges are covered by section 3599, majority op. at 454, the majority cites no authority which actually supports that assertion. The availability of counsel under section 3599 was not at issue in either the United States Supreme Court decisions — Hill and Nelson — or the Eleventh Circuit decision — Tompkins v. Secretary, Department of Corrections, 557 F.3d 1257 (11th Cir.), cert. denied, — U.S. -, 129 S.Ct. 1305, 173 L.Ed.2d 482 (2009)-relied on by the majority as support for its assertion regarding the availability of the counsel under section 3599. In any event, we need not decide whether section 1983 method-of-execution challenges are covered by section 3599.
This is so because even if section 3599 covers such challenges, it does not impose any “mandatory” requirements on the State of Florida or the lawyers it employs through CCRC — which brings us to the second flaw in the majority’s reasoning. That is, the majority reads requirements into the federal statute that are not present in the statute. To begin with, it is important to understand that the federal statute does not require that any state provide counsel for appointment under the statute. Nor does the statute provide that a lawyer appointed under its provisions is obligated to participate in all proceedings covered by the statute. On the contrary, section 3599(e) specifically provides that counsel appointed under the statute may be “replaced by similarly qualified counsel upon the attorney’s own motion.” (Emphasis added.) Nothing in the federal statute is inconsistent with Florida’s statutory limitations on CCRC representation. And nothing in the federal statute indicates that Congress sought to dragoon lawyers employed by a state for purposes forbidden by the law of that state.
Serious constitutional concerns would, of course, be raised by any such attempt by Congress to impress state employees into service to further the policy objectives of the Congress. See Printz v. United States, 521 U.S. 898, 928, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (“It is an essential attribute of the States’ retained sovereignty that they remain independent and autonomous within their proper sphere of authority. It is no more compatible with this independence and autonomy that their officers be “dragooned” ... into administering federal law, than it would be compatible with the independence and autonomy of the United States that its officers be impressed into service for the execution of state laws.”) (citation omitted). Here, the constitutional concerns are raised not by the federal statute itself but by the majority’s misreading of the federal statute.
The reasoning underlying the majority’s conclusion regarding the “mandatory” nature of the federal statute necessarily has implications beyond the context of section 1983 method-of-execution claims. Most saliently, the majority’s reasoning on this point would require that CCRC participate in clemency proceedings, even though section 27.7001 expressly provides that the “intent of the Legislature” is that “collateral representation shall not include representation during ... proceedings commenced under Chapter 940”- — the chapter governing clemency proceedings. Harbison v. Bell, — U.S. -, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009), held that section 3599 covers state clemency proceedings. *460 Given Harbison’s holding that such proceedings are covered by section 3599, the reasoning of the majority here regarding the “mandatory” nature of the federal statute compels the conclusion that CCRC must participate in state clemency proceedings. This highlights how the majority’s approach gives short shrift to the limitations placed by the Legislature on CCRC.
III. CONCLUSION
Under the doctrine of stare decisis, this Court is obligated to take our precedents seriously. We should not overturn a precedent without a strong justification for doing so. But here the grounds relied on by the majority to justify the decision to reject Kenny are demonstrably mistaken. Under the doctrine of the separation of powers, this Court is obligated to take the text of statutes seriously. We should not impose an interpretation on a statute that cannot be reconciled with the statutory text. But here the interpretation of sections 27.702(1) and 27.7001 adopted by the majority is at odds with the clear meaning of the statutory text. For these reasons, I dissent from the majority’s decision to require that CCRC represent Darling in the litigation of a section 1983 method-of-execution claim in federal court.[3]
QUINCE and POLSTON, JJ., concur.

. I express no view concerning whether issues related to the scope of CCRC's representation are cognizable either under Florida Rule of Criminal Procedure 3.851 or in a petition to invoke this Court's all writs jurisdiction.